UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 10-81454-DHW
                                                         Chapter 7
CHRIS B. PITTS,

      Debtor.
_____

TERESA R. JACOBS,
UNITED STATES BANKRUPTCY
ADMINISTRATOR,

      Plaintiff,
v.                                                       Adv. Proc. No. 11-08003-DHW

CHRIS B. PITTS,

      Defendant.

## MEMORANDUM OPINION

Before the court is the bankruptcy administrator's complaint seeking a judgment denying Chris B. Pitts ("Pitts") a discharge of his debts pursuant to § 727(a)(4)(A). The administrator alleges that Pitts knowingly and fraudulently, in or in connection with his bankruptcy case, made a false oath or account. The matter came on for trial on June 22, 2011. For the following reasons, judgment will enter denying Pitts a discharge in this chapter 7 case.

### Jurisdiction

This court's jurisdiction in this adversary proceeding is derived from 28 U.S.C. § 1334 and from an order of the United States District Court for this district referring its jurisdiction in title 11 matters to the bankruptcy

court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further, because an objection to a debtor's discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J), this court's jurisdiction is extended to the entry of a final order or judgment.

Factual Findings

Pitts is an attorney whose license to practice law was suspended in March 2009. Prior to suspension, his practice was principally in the areas of real estate, personal injury, and consumer bankruptcy law. Pitts and/or Christopher B. Pitts, P.C., had law offices in Montgomery, Birmingham, and Huntsville, Alabama.

Pitts filed a chapter 7 petition for relief in this court on September 10, 2010. The petition, along with accompanying lists, statements and schedules, all of which Pitts filed under penalty of perjury, admittedly contain numerous false statements.[1]

UNDISPUTED FALSE STATEMENTS

1. Debtor's Name

When Pitts filed the bankruptcy petition, he did so under the name of Chris B. Pitts. Three days later, he filed the schedules and statements (Doc. #4) under the name of Bernard C. Pitts. Several days later, he filed a declaration of electronic filing (Doc. #10) reflecting his name as Bernard C. Pitts. About two weeks later, Pitts filed an amended declaration of electronic filing (Doc. #19) wherein Pitts showed his name as Chris B. Pitts.

His full legal name is Christopher Bernard Pitts. Neither the petition nor any of the lists, statements, or schedules reflect his correct legal name.

---

[1] Pitts described the hastily filed petition, lists, statements, and schedules as sloppy, raggedy, and replete with inaccuracies.

At trial, Pitts admitted that the name used on the petition, schedules, and the two declarations was not his legal name. Pitts testified that the misstatement was the result of a combination of factors. First, he attributed the discrepancy to the haste in which his petition was filed. Secondly, he contended that he signs his name differently on almost every occasion. Nevertheless, he maintained that the misstatement of his true name was not done with the intent to conceal his identity.

2. Debtor's Address

In the original petition, Pitts listed his address as 6300 Eastwood Glenn Place, Birmingham, Jefferson County, Alabama 35203. At trial, Pitts admitted that this purported Birmingham address is incorrect.

On October 8, 2010, he filed a motion to continue the meeting of creditors (Doc. #22). This motion reflects his address as 613 Spencer Avenue, Auburn, Alabama 36830. Finally, on November 9, 2010, Pitts filed an amended petition (Doc. #38) listing his address as 6300 East Glenn, Montgomery, Alabama 36116.

In reality, as of the date of bankruptcy, Pitts resided with his wife and children at 6300 Eastwood Glen Place, Montgomery, Alabama.

Pitts testified that the address discrepancy resulted from the haste in which the petition was filed. Further, he testified that venue for this case would have been proper in the Northern District of Alabama because his principal place of business (law offices in Birmingham and Huntsville) was located there. According to Pitts, he had originally planned to file the case in Birmingham, but his attorney could not file the case there due to a software license issue. Finally, Pitts testified that, as a result of his financial problems, he had experienced marital difficulties which led to a brief separation from his wife. During that time of separation, Pitts testified that he resided at the 613 Spencer Avenue, Auburn address.

3

3. Debtor's Accounts Receivable

In the schedules attached to the petition, Pitts asserted that he had no accounts receivable. *See* Schedule B, Item 16 (Doc. #4). In reality, Pitts is owed attorney fees by some of his consumer bankruptcy clients who are paying him through the chapter 13 trustee. As of the petition date, these clients owed Pitts about $1,900.

Pitts testified that he did not view the money coming to him from the chapter 13 trustee as receivables. According to Pitts, even if those funds were considered receivables, they come to him infrequently and in such small amounts that he forgot about them. Further, Pitts maintains that he testified at the meeting of creditors about money owed to him by consumer bankruptcy clients. Hence, the trustee was fully aware of that possible asset and has made no claim to those funds because they are so meager. In short, Pitts contends that while he did not list these receivables, the trustee was fully aware of them and chose not to pursue them.

4. Debtor's Marital Status

Pitts listed his marital status as "Single" on Schedule I accompanying the petition. On another schedule, also accompanying the petition, Pitts described his marital status as married but with separate households. *See* Form B-22 Means Test (Doc. #4). Both of these schedules were filed on September 13, some three days after the petition date.

At trial, Pitts did not endeavor to explain why Schedule I inaccurately described him as single. He did testify that as of the time of the filing of the schedules, he had separated from his wife and moved to Auburn, Alabama.

5. Suits To Which Debtor Was A Party

In the Statement of Financial Affairs, Pitts asserted that there were no "[s]uits and administrative proceedings, executions, garnishments and

4

attachments" to which he was a party during the year preceding the petition. *See* Statement of Financial Affairs, Item 4 (Doc. #4).

At trial, Pitts admitted that he was in fact being sued as of the time of his bankruptcy filing but that his failure to list those suits was, in part, a result of the hastily filed petition. Pitts further contended that he planned to amend to correct this error but that he lacked the ability to determine who was suing him because he did not have access to alacourt.com ("The Alabama Trial Court System at your desk").

6. Payment of Attorney Fees

In the Statement of Financial Affairs, Pitts responded to an inquiry about payments that he had made relating to debtor counseling or bankruptcy. *See* Statement of Financial Affairs, Item 9 (Doc. #4). Pitts stated that he had paid Darryl A. Parker $500 to represent him in connection with the bankruptcy case. At trial, however, Pitts testified that he had not paid anything to Parker for his services, although it had been his intent to pay him $500.

7. Name, Nature, and Location of Debtor's Businesses

In the Statement of Financial Affairs at Item 18 (Doc. #4), Pitts checked the "None" box in response to a command to list all businesses in which he was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed within the last six years.

In reality, Pitts had at least four business entities which should have been disclosed. Within six years of his bankruptcy, Pitts had a controlling interest in Christopher B. Pitts, P.C., Environ, Inc., Closing Specialist, P.C., and the Pitts Group, L.L.C.

In his testimony relating to these omissions, Pitts stated that he was unaware that any question about his business interests was a part of the

attachments" to which he was a party during the year preceding the petition. *See* Statement of Financial Affairs, Item 4 (Doc. #4).

At trial, Pitts admitted that he was in fact being sued as of the time of his bankruptcy filing but that his failure to list those suits was, in part, a result of the hastily filed petition. Pitts further contended that he planned to amend to correct this error but that he lacked the ability to determine who was suing him because he did not have access to alacourt.com ("The Alabama Trial Court System at your desk").

6. Payment of Attorney Fees

In the Statement of Financial Affairs, Pitts responded to an inquiry about payments that he had made relating to debtor counseling or bankruptcy. *See* Statement of Financial Affairs, Item 9 (Doc. #4). Pitts stated that he had paid Darryl A. Parker $500 to represent him in connection with the bankruptcy case. At trial, however, Pitts testified that he had not paid anything to Parker for his services, although it had been his intent to pay him $500.

7. Name, Nature, and Location of Debtor's Businesses

In the Statement of Financial Affairs at Item 18 (Doc. #4), Pitts checked the "None" box in response to a command to list all businesses in which he was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed within the last six years.

In reality, Pitts had at least four business entities which should have been disclosed. Within six years of his bankruptcy, Pitts had a controlling interest in Christopher B. Pitts, P.C., Environ, Inc., Closing Specialist, P.C., and the Pitts Group, L.L.C.

In his testimony relating to these omissions, Pitts stated that he was unaware that any question about his business interests was a part of the

Statement of Financial Affairs until he read the allegations in the plaintiff's complaint. The implication of that testimony was that his attorney had completed the response and that Pitts had not reviewed it.

Pitts testified that Christopher B. Pitts, P.C. was the entity through which he practiced law and that it had been an active business. He made no explanation for his failure to disclose the existence of this corporation other than to assert that it was common knowledge that he was engaged in the practice of law.

Pitts testified that Environ, Inc. and Closing Specialist, P.C. were formed in 2002 with the plan that they would qualify as 8-A minority owned businesses. An 8-A qualification, according to Pitts, would have enabled these businesses to enjoy preferences in bidding on certain federal contracts. Neither Environ, Inc. nor Closing Specialist, P.C. were ever given 8-A status. Pitts testified that neither corporation had a business license, bank account, offices, or employees. Both corporations were dissolved in May 2007.

With regard to the Pitts Group, L.L.C., Pitts testified that he formed that business in 2001 to provide public relations services. In fact, the Pitts Group, L.L.C. actually performed work for a Gadsden, Alabama concern and was paid for those services. While little or no work was done by the Pitts Group, L.L.C. after Pitts began practicing law in September 2002, the company was not formally dissolved until May 2007. Pitts did not explain why he omitted this business entity in his Statement of Financial Affairs other than to imply that nothing of value remained of that business and that the business had been idle for a number of years.

8. Income From Employment Or Business Operation

In the Statement of Financial Affairs at Item 1 (Doc. #4), Pitts stated that his gross income for 2008 was $45,000 and that he had no gross income for 2009. At trial, Pitts admitted that this was an error.

6

Case 11-08003    Doc 10    Filed 09/01/11    Entered 09/01/11 15:58:02    Desc Main
Document      Page 6 of 13

In addition to the statement being incorrect, the answer supplied by Pitts to the query made at Item 1 is not complete. Pitts was called upon to state not only his gross income for the two prior years but also his gross income from the beginning of 2010 until the time of his bankruptcy.

At trial, Pitts admitted that in the Spring of 2010 he received a $49,000 referral fee in a personal injury case. No explanation, other than the haste in which the petition was filed, was given for this omission.

## STATEMENTS IN WHICH FALSITY IS DISPUTED

At trial, the bankruptcy administrator questioned Pitts about what she apparently perceived as other false statements contained in the petition, schedules, and lists.

1. Debtor's Interests In Realty

In Schedule D (Doc. #4), Pitts lists a debt owing to "Up/Regionsm" which is secured by a mortgage. Yet, in Schedule A (Doc. #4), Pitts's response concerning his interests in realty is "None."

At trial, Pitts testified that he previously owned real property on Strathmore Drive in Mongomery, Alabama with his wife, but he transferred his interest in that property to her in December 2005. Although he has no ownership interest in that realty, he remains liable on the note.

Based upon Pitts's uncontroverted testimony regarding his prior interest in the Strathmore Drive realty and his continued liability on the note secured by that property, the court finds that these statements were not false.

2. Name of Employer

At trial, the bankruptcy administrator questioned Pitts about a

7

response that he made in Schedule I (Doc. #4) wherein he stated that his employer's name is TPF.

As earlier noted, Pitts practiced law through Christopher B. Pitts, P.C. According to Pitts, the corporation did business as "The Pitts Firm" and that "TPF" is a mere acronym for the corporate entity.

The court finds that Pitts's use of the name TPF in Schedule I to denote his employer is not materially false.

3. Repossessions

In the Statement of Financial Affairs, Pitts asserted that no repossessions had occurred within the year preceding the petition. *See* Statement of Financial Affairs, Item 5 (Doc. #4),

Although Pitts was questioned at trial about this statement, no proof was made that any of his property had been repossessed with the year prior to the bankruptcy filing. Therefore, the court finds that this statement was not false.

Conclusions of Law

The Bankruptcy Code provides that the court shall grant the debtor a discharge unless:

> (4) the debtor knowingly and fraudulently, in or in connection with the case—
> (A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A).

"At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." Fed. R. Bankr. P. 4005. "Moreover, courts generally construe the statutory exceptions to discharge in

8

bankruptcy 'liberally in favor of the debtor,' and recognize that '[t]he reasons for denying a discharge . . . must be real and substantial, not merely technical and conjectural.'" *In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994) (quoting *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987). However, this policy "applies only to the honest debtor." *Coady v. D.A.N. Joint Venture III, L.P. (In re Coady)*, 588 F.3d 1312, 1315 (11th Cir. 2009) (quoting *In re Jennings,* 533 F.3d 1333, 1338-39 (11th Cir. 2008)).

To prevail in a claim under § 727(a)(4)(A), the plaintiff must prove that "the debtor knowingly made [a] false statement with the specific intent to defraud." *See Bank of Miami v. Espino (In re Espino)*, 806 F.2d 1001, 1002 (11th Cir. 1986). "Deliberate omissions by the debtor may also result in the denial of a discharge." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). "However, a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent." 6 *Collier on Bankruptcy* ¶ 727.04[1][a] (15th ed. rev'd 2006).

"To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991). It is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik*, 748 F.2d at 618.

Before deciding whether any of the eight false statements made by Pitts were fraudulent and material, two general defenses made by Pitts at trial must be addressed. First, Pitts asserts a defense under LBR 1009-1, Bankr. M.D. Ala. That local rule provides that "[a]mendments to Petitions, Lists, Schedules and Statements may be filed at any time . . . ." Pitts is apparently arguing that the rule authorizes a debtor to complete the petition and accompanying documents without regard to accuracy so long as a subsequent truthful statement is made by way of amendment. That argument is misguided.

This court does not hold debtors to a letter-perfect standard with

9

respect to their completion of the requisite bankruptcy papers.  The court recognizes that honest mistakes and errors are made in completing those papers.  Hence, the purpose of the local rule is to permit and encourage amendments to correct those types of errors.  The rule does not, however, authorize knowingly false statements even when the petition is filed on an expedited basis.  The rule does provide a debtor who must file quickly with the means to obtain additional time to file accurate and complete schedules, lists, and statements.  *See* Fed. R. Bankr. P. 1007(c).  Pitts did not employ this route.  Rather, his approach was to fill in the blanks without regard to the accuracy and truthfulness of the information provided.

Pitts's second general defense is that even if he made false statements, no creditor suffered any harm as a result.  That argument, too, is misguided.  The Court of Appeals for this circuit has decided, on facts not dissimilar to those in this case, that a "detriment to the creditor need not be shown in order to bar discharge for making a false oath." *Chalik*, 748 F.2d at 618.  The "debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious." *Id.* (citing *Diorio v. Kreisler-Borg Construction Co.*, 407 F.2d 1330 (2nd Cir. 1969).

Now, the court must decide whether any of the eight false statements contained in Pitts's bankruptcy papers were fraudulent and material.  The court will look first at the materiality prong.  While one could logically contend that any information solicited from a debtor in the petition, schedules, lists, and statements is material, the court will nevertheless address each of the false statements involved here.

Pitts did not use his true legal name in his bankruptcy papers.  Instead, he used two variants of that name.  Misstating a debtor's legal name could affect the trustee's ability to discover assets.  For example, a check of official property records may not reveal the existence of an interest in property that was listed or registered under the debtor's legal

10

name in the public record. Hence, falsely stating one's name is material. Falsely stating one's address is also material. The debtor's true place of residence is the logical starting point for the trustee to search for assets. Failure to truthfully disclose a debtor's residential address could adversely affect the administration of the bankruptcy estate.

Pitts falsely stated that he had no accounts receivables. That false statement is material because it relates to an asset of his estate. The fact that a trustee may abandon or the debtor may exempt a listed asset does not render that asset immaterial. "The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act." *Chalik*, 748 F.2d at 618.

Misrepresenting his marital status, too, was a material misrepresentation. Such false statement could affect the administration of the bankruptcy estate. For example, in order to determine whether the bankruptcy case constitutes an abuse under 11 U.S.C. § 707(b), the size of the debtor's household as well as the earnings, or lack thereof, by the debtor's spouse, are highly relevant. Misrepresentation of his true marital status prevented the trustee and creditors from determining whether this case constituted an abuse under the law.

Pitts falsely stated that he was not a party to any suit within one year of filing for bankruptcy relief. Clearly, suits against or by Pitts represent claims against or assets of his bankruptcy estate and would affect how his bankruptcy estate is administered. The court takes judicial notice of fourteen motions filed by Pitts in the bankruptcy case to avoid judicial liens. That he was unaware of these at the filing of the case is incredulous.

While Pitts falsely stated that he paid his attorney $500 for representing him in the bankruptcy case, that statement is only peripherally material. A court has an obligation to monitor a debtor's transactions with his bankruptcy attorney. *See* 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016 and 2017. In the event that the court determines that the legal fee paid by the debtor is not reasonable, the court could order the fee disgorged and

11

returned either to the debtor or to the estate. Therefore, there is the possibility that a false statement regarding the amount of attorney fees paid could have an effect upon the debtor's bankruptcy estate. The particulars in this case, however, make that unlikely.

Pitts made a false statement regarding his interest in business entities within the six years preceding bankruptcy. That omission was material in that it would affect the trustee's ability to determine the disposition of the debtor's property.

Finally, the false statements made by Pitts regarding his income for past years is material. It is self-evident and without need of further explanation that the debtor's income and income sources are vital pieces of information needed by a bankruptcy trustee to determine the debtor's property interests.

Having found that all but one of the false statements are material, the court now turns to the fraudulent intent element of the § 727(a)(4)(A) claim. "Since it is unlikely that a debtor will admit that he intended to hinder, delay, or defraud his creditors, the debtor's intent may be established by circumstantial evidence or inferred from the debtor's course of conduct." *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008).

While the circumstantial evidence in this case is likely not strong enough to infer fraudulent intent were a higher standard of proof required, it is sufficient to support that finding under the preponderance standard employed here. In this case, the court is not dealing with an unsophisticated debtor who lacked an appreciation for the importance of accuracy and complete truthfulness in completing the bankruptcy petition, lists, statements, and schedules. Instead, this case involves an attorney whose principal area of practice was consumer bankruptcy law. That a bankruptcy lawyer would make false statements in his own bankruptcy papers, without a fraudulent intent, is highly unlikely.

Further, the sheer number of materially false statements made by Pitts adds to the circumstantial evidence of his fraudulent intent. In this case, Pitts made at least seven materially false statements that could have impacted the trustee's ability to administer the bankruptcy estate. Even now, most of those false statements remain unamended in the sworn bankruptcy papers.

Conclusion

For these reasons, the court concludes that Pitts should be denied a discharge in this case under 11 U.S.C. § 727(a)(4)(A). An order consistent with this opinion will enter separately.

Done this the 1st day of September, 2011.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Chris B. Pitts, *Pro Se* Defendant
Teresa R. Jacobs, Bankruptcy Administrator